# United States Court of Appeals
## For the First Circuit

No. 21-1519

UNITED STATES OF AMERICA,

Appellee,

v.

HECLOUIS NIEVES-DÍAZ, a/k/a Egloy, a/k/a Eloy,

Defendant, Appellant.

No. 21-1520

UNITED STATES OF AMERICA,

Appellee,

v.

HECLOUIS JOEL NIEVES-DÍAZ,

Defendant, Appellant.

———————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

———————

Before

Barron, Chief Judge,
Hamilton, Circuit Judge,[*]
and Thompson, Circuit Judge.

———————

Ivan Santos-Castaldo, with whom Eric Alexander Vos, Federal

———————

[*] Of the Seventh Circuit, sitting by designation.

Public Defender, <u>Franco L. Pérez-Redondo</u>, Assistant Federal Public Defender, Supervisor, Appeals Division, and <u>Alejandra Bird Lopez</u>, Research and Writing Specialist, were on brief, for appellant.

    <u>Gregory B. Conner</u>, Assistant United States Attorney, with whom <u>W. Stephen Muldrow</u>, United States Attorney, and <u>Mariana E. Bauzá-Almonte</u>, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

<hr>

April 17, 2024

<hr>

BARRON, **Chief Judge**.  While on supervised release for a federal drug conviction, Heclouis Nieves-Díaz was convicted of (i) possession of ammunition while being a convicted felon, 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (ii) illegal possession of a machine gun, 18 U.S.C. §§ 922(o) and 924(a)(2); and (iii) possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  He received an 84-month prison term for each conviction, with the sentences to be served concurrently.  Based on this same criminal conduct, he also had his supervised release revoked and received an 18-month prison term for the revocation sentence, which was to be served consecutively to his 84-month sentences.  Nieves now challenges both the 84-month sentences, which we vacate, and the revocation sentence, which we affirm.

**I.**

On April 11, 2013, Nieves pleaded guilty to one count of drug conspiracy in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 860.  He was sentenced for that conviction to 80 months of imprisonment and 96 months of supervised release, though the prison sentence was later reduced to a term of 57 months.

Nieves's term of supervised release was twice revoked.  After then having been released for the third time in May 2020, but while still on supervised release, Nieves went to live at his grandmother's home in Naranjito, Puerto Rico.  Months later, in October 2020, Puerto Rico police officers executed a search warrant

at an apartment in San Juan, Puerto Rico, where Nieves was residing at the time. Prior to the search, Puerto Rico police officers had surveilled the apartment and observed individuals approach the property on various occasions and subsequently leave it with what appeared to be controlled substances. The search of the property turned up cocaine, marijuana, approximately 149 rounds of .223 caliber ammunition, and a drop-in auto-sear device -- also known as a "chip" -- which is a device that, when installed on a Glock pistol, renders it capable of operating as a fully automatic weapon.

Nieves was arrested at the property following the search. Soon thereafter, Nieves was indicted in the United States District Court for the District of Puerto Rico. The indictment alleged that he had committed the following offenses: (i) possession of ammunition while being a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (ii) illegal possession of a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2); and (iii) possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Nieves entered a straight plea of guilty to each of the charged offenses. The U.S. Probation Office notified the District Court that Nieves had violated the terms of his supervised release for committing a new offense; possessing controlled substances;

- 4 -

and possessing a firearm, ammunition, destructive device, or dangerous weapon.

The Probation Office's Presentence Investigation Report (PSR) stated that, for each offense, Nieves's base offense level was 22 under the United States Sentencing Guidelines. The PSR determined that a base offense level of 22 applied for each offense because each had involved a "firearm that is described in 26 U.S.C. § 5845(a)," U.S.S.G. § 2K2.1(a)(3)(A)(ii), and because Nieves "had committed any part" of each offense "subsequent to sustaining one felony conviction of . . . a controlled substance offense," id. § 2K2.1(a)(3)(B).

The PSR further stated that, for each offense, a four-level enhancement applied under U.S.S.G. § 2K2.1(b)(6)(B). That provision provides that a four-level enhancement applies "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense." Id. The PSR explained that Nieves possessed ammunition "in connection with another felony offense, to wit: possession with intent to distribute a controlled substance."

The PSR then determined that, pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b), the resulting adjusted offense level of 26 for each offense had to be reduced by three levels for acceptance of responsibility. Thus, the PSR calculated the total offense level for each offense to be 23. Because the PSR

identified Nieves's criminal-history category as III, the PSR calculated his Guidelines Sentencing Range (GSR) to be 57 to 71 months' imprisonment for each offense.

At the sentencing hearing, the District Court adopted the PSR's sentencing range. Nieves proposed a prison sentence for each offense of 37 months, while the government argued for a prison sentence for each offense of 66 months. The District Court ultimately imposed an upwardly variant prison sentence of 84 months for Nieves's conviction on each count, with each sentence to be served concurrently but consecutively to the sentence to be imposed on revocation of his supervised release.

The applicable GSR for the revocation sentence was 12 to 18 months of imprisonment. The government and Nieves each argued for a revocation sentence of 12 months of imprisonment. The District Court imposed a revocation sentence of 18 months of imprisonment.

Nieves timely appealed from the concurrent 84-month prison sentences as well as the 18-month revocation sentence. The appeals were then consolidated.

## II.

Nieves challenges his 84-month prison sentences on the ground that the District Court improperly calculated his GSR for each of the underlying offenses. See United States v. Pupo, 995 F.3d 23, 28 (1st Cir. 2021) ("A sentence is procedurally

unreasonable when the district court commits a procedural error such as 'failing to calculate (or improperly calculating) the Guidelines range . . . .'" (quoting United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020))). Specifically, Nieves contends that the District Court incorrectly calculated the GSR by: (i) assigning him a base offense level for each offense of 22 under U.S.S.G. § 2K2.1(a)(3); and (ii) applying for each offense the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

"We review federal criminal sentences imposed under the advisory Guidelines for abuse of discretion." United States v. Vélez-Soto, 804 F.3d 75, 77 (1st Cir. 2015). "Within this framework, we review a district court's factual findings for clear error, and its interpretation and application of the Guidelines de novo." Id. Any "error of law underlying a sentencing court's decision constitutes an abuse of discretion." Id. at 78.

**A.**

We begin with Nieves's contention that the District Court erred in determining, pursuant to U.S.S.G. § 2K2.1(a)(3), Nieves's base offense level to be 22 for each offense. Section 2K2.1(a)(3) establishes a base offense level of 22 where the offense "involved a . . . firearm that is described in 26 U.S.C. § 5845(a)," id. § 2K2.1(a)(3)(A)(ii), and where the "defendant committed any part of the . . . offense subsequent to sustaining

one felony conviction of either a crime of violence or a controlled substance offense," id. § 2K2.1(a)(3)(B).

Nieves contends that the District Court erred in relying on his prior conviction for conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 to determine that, under U.S.S.G. § 2K2.1(a)(3)(B), he had committed "any part of" each of his offenses "subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." That is so, he contends, because a conspiracy offense does not constitute a "controlled substance offense" for purposes of that provision of the Guidelines. Id.

We have repeatedly construed the term "controlled substance offense" as it appears elsewhere in the Guidelines, however, to encompass conspiracy offenses. Id.; see United States v. Rodríguez-Rivera, 989 F.3d 183 (1st Cir. 2021) (holding that a violation of 21 U.S.C. § 846 constitutes a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.2); United States v. Lewis, 963 F.3d 16, 21 (1st Cir. 2020) ("'[C]ontrolled substance offenses' under § 4B1.2 include so-called inchoate offenses . . . ."); see also United States v. Guerrero, 19 F.4th 547, 552 (1st Cir. 2021) (describing the law-of-the-circuit

doctrine).  Because Nieves identifies no reason for our concluding otherwise here, we reject this aspect of Nieves's challenge.[1]

Nieves also contends that the District Court erred in concluding that each of his offenses triggered the application of § 2K2.1(a)(3)(A)(ii), which applies only when an "offense involved a . . . firearm that is described in 26 U.S.C. § 5845(a)."  In pressing this argument, Nieves contends that the District Court -- like the PSR -- erred in treating the "chip" found in the San Juan apartment as if it were a "firearm that is described in 26 U.S.C. § 5845(a)."  Id.  Nieves acknowledges that 26 U.S.C. § 5845(a) defines "firearm" to include "a machinegun" and that 26 U.S.C. § 5845(b) goes on to define "machinegun" to include "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machine gun."  He also concedes that a "chip" constitutes a "machinegun" under § 5845(b), such that it is a "firearm" under 26 U.S.C. § 5845(a).  But he contends that a "chip" is nonetheless not a "firearm" for purposes of U.S.S.G.

---

[1] Nieves admits that he raises this issue "solely to preserve it for possible further review."  The government responds that "Nieves contends that he raises [this issue] for preservation [purposes], but it is not clear he even does that.  He argues that the Guidelines' commentary went too far but he does not, for example, argue why this Court's decision in [United States v. Rodríguez-Rivera, 989 F.3d 183 (1st Cir. 2021)] was incorrect."  We disagree with the government's intimation that Nieves did not preserve this issue for further review.  Nieves's opening brief succinctly but sufficiently sets forth his grounds for disagreeing with Rodríguez-Rivera's reasoning.  Nothing more is required of Nieves.

§ 2K2.1(a)(3)(A)(ii) because of Application Note 1 of the commentary to § 2K2.1.

Nieves points out that the Note states that, for purposes of § 2K2.1, "[f]irearm" has "the meaning given that term in 18 U.S.C. § 921(a)(3)." Id. § 2K2.1 cmt. n.1. He also points out that 18 U.S.C. § 921(a)(3) defines "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." He then goes on to assert that 18 U.S.C. § 921(a)(3)'s definition of a "firearm" does not itself include a "chip" -- an assertion that the government does not dispute. He thus contends that, given the Note, § 2K2.1(a)(3)(A)(ii) cannot be construed to apply based on the "chip."

This contention has merit, however, only if Application Note 1 does not "conflict[]" with § 2K2.1(a)(3)(A)(ii) in defining a "firearm" to exclude a "chip." United States v. Walker, 89 F.4th 173, 181 n.5 (1st Cir. 2023). And, as the government explains, § 2K2.1(a)(3)(A)(ii) expressly defines "firearm" to be a "firearm" "described in 26 U.S.C. § 5845(a)," and 26 U.S.C. § 5845 includes, as Nieves himself acknowledges, a "chip" in its definition of "firearm." Thus, because the Note defines "firearm" to exclude what the Guideline expressly includes, the Note does conflict with

- 10 -

the relevant Guideline provision and so provides no support for Nieves's position. Accordingly, the District Court did not err in determining that § 2K2.1(a)(3)(A)(ii) of the Guidelines applies.

**B.**

Having identified no error in the District Court's base-offense-level determination, we move on to Nieves's challenge to the District Court's application of a four-level enhancement based on U.S.S.G. § 2K2.1(b)(6)(B) for each of his offenses. That enhancement applies "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense." Id. As we will explain, this challenge fares better.[2]

**1.**

The District Court applied the enhancement solely based on the ammunition found at the San Juan apartment. Nieves points out, however, that the commentary to the Guideline that sets forth

---

[2] The parties disagree about what standard of review applies to this issue. "We review the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error." United States v. Bailey, 405 F.3d 102, 113 (1st Cir. 2005) (internal quotations and citations omitted). "[A] district court's determination of the relationship between ammunition and another offense is most usually a factual finding." United States v. Eaden, 914 F.3d 1004, 1007 (5th Cir. 2019) (citing United States v. Coleman, 609 F.3d 699, 708 (5th Cir. 2010)). "[A factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re The Bible Speaks, 869 F.2d 628, 630 (1st Cir. 1989) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1946)).

the enhancement provides that it applies only "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively."  Id. § 2K2.1 cmt. n.14(A).  Thus, Nieves contends, and the government does not dispute, the enhancement applies here only if the record shows that it is more likely than not that the ammunition had such a facilitative or potentially facilitative effect.  See United States v. Burgos-Figueroa, 778 F.3d 319, 320 (1st Cir. 2015) ("It is common ground that a sentencing enhancement must be supported by a preponderance of the evidence.").

In urging us to reject this challenge, the government first contends that we must apply a presumption akin to the one that Application Note 14(B) of the commentary to § 2K2.1 sets forth.  The Note states in that regard that "[s]ubsection[] (b)(6)(B) . . . appl[ies] . . . in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia," and "[i]n these cases, application of subsection[] (b)(6)(B) . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively."  Id.

The government recognizes that ammunition is not itself a "firearm."  But the government argues that the reasons that support the application of a presumption of a potentially

- 12 -

facilitative effect in the case of a firearm also support the application of the same presumption in the case of ammunition, just as the Sixth Circuit held in United States v. Coleman, 627 F.3d 205, 212 (6th Cir. 2010).

It is not evident that the District Court relied on the presumption on which the government now asks us to rely to apply the enhancement. But that wrinkle aside, we do not agree that the application of the requested presumption is warranted, largely for the reasons set forth in the dissent in Coleman, see id. at 215-18 (Gilman, J., concurring in part and dissenting in part), and the Fifth Circuit's decision in United States v. Eaden, 714 F.3d 1004 (5th Cir. 2019).

The firearm-based presumption that the Note describes rests on the assessment that a firearm's presence on the scene in and of itself would embolden the defendant -- and thereby facilitate the defendant's commission of the offense -- even if that firearm were not loaded. See United States v. Rhind, 289 F.3d 690, 695 (11th Cir. 2002) ("[W]e agree with the district court that enough evidence existed to justify finding that the defendants possessed the firearms 'in connection with' the underlying felony. The fact that the guns were not loaded or inoperable is not dispositive since criminals frequently use unloaded guns to execute crimes."); United States v. Zais, 711 F. App'x 338, 341 (7th Cir. 2017) ("An unloaded firearm may be used as a threat just

as effectively as a loaded one because it is difficult, if not impossible, to tell whether a firearm is loaded when one is staring down its barrel.").  The notion is that because a defendant would know that an observer of the firearm would have no way of determining whether the firearm was loaded or not, it is fair to presume that any defendant engaged in a drug-trafficking offense with a firearm -- even an unloaded one -- at the scene would be emboldened by its presence in committing the offense, as it is fair to presume the firearm would provide that defendant with a ready means of instilling fear, if needed, in others on the scene. See United States v. Sneed, 742 F.3d 341, 345 (8th Cir. 2014) ("[A]n unloaded firearm retains the potential to facilitate a drug crime because those who come in contact with the defendant may be unaware it cannot be fired at them.").

We do not see why the mere presence of ammunition on the scene, however, would similarly warrant a presumption that the defendant would be emboldened.  The circumstances in which a defendant could use even an unloaded firearm to assert control over the scene are self-evident.  But ammunition cannot -- on its own -- cause harm.  We thus do not see how we may conclude that the reasons that support the presumption in the case of a firearm equally support the presumption in the case of ammunition.  See Coleman, 627 F.3d at 215-18 (Gilman, J., concurring in part and dissenting in part).

Moreover, we note that the circumstances in which the display of ammunition -- in and of itself -- would affect an observer in a way akin to how the display of a firearm would are necessarily quite fact-dependent. For example, it is hard to see how one could presume an observer would react to the display of a single bullet on a table in the way one could presume an observer would react to a similar display of a single firearm. Thus, we do not see the basis for making a similar presumption to the one set forth in Application Note 14(B) of the commentary to § 2K2.1 for firearms when the item possessed is merely ammunition.

Accordingly, we must follow the usual course in determining whether an enhancement applies under the Guidelines and so assess whether, considering the record as a whole, the government can meet its burden to show that the evidence in the record makes it more likely than not that the ammunition in this case had the required potentially facilitative effect. See Eaden, 914 F.3d at 1009 ("Stripped of a presumption of facilitation, the government must present facts or circumstances demonstrating that the possession of ammunition facilitated or had the potential to facilitate the other offense."). And, while the government argues that it can meet this burden, we do not agree.

The record suffices to show only that the ammunition in question was found in a Ziplock bag atop a tall kitchen cabinet, close to the ceiling of the apartment in San Juan where the arrest

occurred.  In fact, the photographs of the apartment in the record reveal that the ammunition was not being displayed in a manner that might induce fear in observers, and the District Court made no factual findings to the contrary.

Thus, even accepting that in some circumstances "[a]mmunition has the potential to facilitate a trafficking operation when it is . . . in plain sight to purchasers or others involved in the trafficking," there is no basis in this record for finding that the ammunition here was in "plain sight" of any such persons.  Id.  At most, the ammunition was -- to use the government's phrase -- in "plain view" to law-enforcement officers conducting a search.  But those persons are hardly the ones whose attention a drug trafficker, emboldened by the ammunition's presence, would be seeking to attract as a means of facilitating drug trafficking.  Nor is there any basis on this record for finding that the ammunition played any other facilitative role in the predicate offense.  See Coleman, 627 F.3d at 217 (Gilman, J., concurring in part and dissenting in part) ("The four-level enhancement under U.S.S.G. § 2K2.1(b)(6) could apply to the possession of ammunition alone, for example, where two conspirators plan to rob, say, a bank, with one to bring a gun and the other to bring the ammunition for the gun.  In this hypothetical, the one possessing the ammunition could clearly be found to have facilitated the crime of bank robbery, and thus be

- 16 -

subject to the four-level enhancement."). Accordingly, we see no basis for concluding that the record supports the determination that § 2K2.1(b)(6)(B) applies here.

## 2.

The government does argue, in the alternative, that we may affirm the enhancement's application based on the presence of the "chip." In making this fallback argument, the government emphasizes that -- although the District Court did not rely on the presence of the "chip" in applying the enhancement -- there is no dispute that the "chip" was present in the apartment. The government then goes on to contend that the "chip" is itself a "firearm" for purposes of the Application Note that sets forth the firearm-based presumption described above. Thus, the government argues, the "chip" that was found in the apartment directly triggers that presumption. See United States v. Rodriguez, 630 F.3d 377, 383 n.26 (5th Cir. 2011) ("We can affirm a sentence on any ground that finds support in the record."); United States v. Varela, 138 F.3d 1242, 1244 (8th Cir. 1998) (same).

In support of this argument, the government emphasizes that § 2K2.1(b)(6)(B) refers to "any firearm" and that § 2K2.1(b)(6)(B) appears in the same provision of the Guidelines, § 2K2.1, that addresses "firearm[s] described in 26 U.S.C. § 5845(a)," as discussed above. So, the government argues, it follows that "any firearm" would include a "chip," and thus that

- 17 -

the reference to "firearm" in the Application Note that sets forth the presumption in question is similarly referring to a "chip."

This argument fails to account, however, for Application Note 1 of the commentary to § 2K2.1. That Note states that "[f]or purposes of [§ 2K2.1]: . . . 'firearm' has the meaning given that term in 18 U.S.C. § 921(a)(3)." As we explained above, § 921(a)(3) does not include a "chip" in its definition of "firearm." Moreover, while the government is right that a "chip" is a "firearm" for purposes of some subsections of the Guideline, such as § 2K2.1(a)(3)(A)(ii), which defines a "firearm" by reference to what "is described in 26 U.S.C. § 5845(a)," § 2K2.1(b)(6)(B) does not use the same "is described in 26 U.S.C. § 5845(a)" language or even analogous language. It states instead: "If the defendant . . . used or possessed any firearm . . . in connection with another felony offense . . . increase by 4 levels." Id. (emphasis added).

To be sure, Application Note 1's seeming restriction on the scope of the Guideline provision to only certain firearms must give way if that restriction is in conflict with § 2K2.1(b)(6)(B). Walker, 89 F.4th at 181 n.5. But 18 U.S.C. § 921(a)(3) refers to multiple types of firearms, rather than a single type. Thus, the words "any firearm" in § 2K2.1(b)(6)(B) do not necessarily conflict with the restriction set forth in the Note about the types of firearms encompassed by that provision of the Guidelines, as

- 18 -

those words reasonably may be understood to be describing merely "any firearm" that is described in 18 U.S.C. § 921(a)(3). As a result, the phrase "any firearm" in § 2K2.1(b)(6)(B), though expansive, reasonably may be understood not to be so expansive as to include even a device that § 921(a)(3) does not deem to be a "firearm" at all. And, as we have explained, the government does not dispute that § 921(a)(3) excludes a "chip" from its definition of "firearm."

We note, too, that, insofar as it is not clear whether the Note and the Guideline provision "conflict[]," Walker, 89 F.4th at 181 n.5, we see no reason to opt for the more expansive construction of the Guideline provision and thus one that would treat that provision as conflicting with the Note. For, in the event there is ambiguity as to whether the Guideline provision and the Note conflict, we conclude that the nature of the ambiguity would be such that we then would have to apply the rule of lenity. See United States v. Luna-Díaz, 222 F.3d 1, 3 n.2 (1st Cir. 2000) (noting that the rule of lenity applies to the interpretation of the Guidelines).

### 3.

For these reasons, we conclude that the District Court did err in applying the four-level enhancement to Nieves.

Accordingly, we vacate the District Court's sentences and remand for resentencing not inconsistent with this opinion.[3]

---

[3] Nieves also argues that the District Court "did not justify a significant 13 to 27-month upward variance, rendering the sentence procedurally and substantively unreasonable." In so arguing, Nieves points to aspects of the sentencing hearing in which the District Court made statements about the unusually dangerous nature of machine guns and expressed concerns about the Sentencing Commission's treatment of machine-gun offenses. Because we conclude that the District Court committed procedural error by improperly calculating Nieves's Guidelines Sentencing Range, such that the 84-month sentences must be vacated in any event, we need not address this argument. However, we note that the District Court, in handing down its sentence, tied the upwardly variant term to the factors set out in 18 U.S.C. § 3553(a) and expressly stated that Nieves, who had committed the offenses while on supervised release, "has established a notable pattern of conduct, which is represented by an utter disregard for the law and the mandates that this Court has previously imposed on him," without explicitly relying on any Kimbrough-based policy disagreement as its reason to vary upward. See United States v. Stone, 575 F.3d 83, 89 (1st Cir. 2009) ("Kimbrough 'makes manifest that sentencing courts possess sufficient discretion under section 3553(a) to consider requests for variant sentences premised on disagreement with the manner in which the sentencing guidelines operate.'" (quoting United States v. Rodríguez, 527 F.3d 221, 231 (1st Cir. 2008))). Indeed, the District Court did not mention Kimbrough during sentencing and also left unchecked, on its Statement of Reasons form, the box for "Policy Disagreement with the Guidelines (Kimbrough v. U.S., 552 U.S. 85 (2007))" while checking off the box for a § 3553(a) variance. We thus caution that, insofar as the District Court does not intend to support a decision to vary upward even in part under Kimbrough based on a policy disagreement with the Guidelines, it must provide, on remand, a case-specific explanation for the upward variance, if any. See United States v. Rodriguez, 525 F.3d 85, 109 (1st Cir. 2008).

Finally, we address Nieves's contention that his revocation sentence was both procedurally and substantively unreasonable.  We consider each challenge in turn.

**A.**

Nieves contends that his revocation sentence was procedurally unreasonable because "it was driven by punitive considerations which are assigned minimal weight in a sentence on revocation."  Nieves roots this argument in 18 U.S.C. § 3583(e), which explicitly incorporates by reference some -- but not all -- of the sentencing factors described in 18 U.S.C. § 3553(a).

The enumerated factors include the nature and circumstances of the offense, id. § 3553(a)(1); the history and characteristics of the offender, id.; the need for adequate deterrence, id. § 3553(a)(2)(B); the need to protect the public, id. § 3553(a)(2)(C); and certain needs of the offender, such as the need for medical care or educational training, id. § 3553(a)(2)(D).  The enumerated factors do not include such § 3553(a) factors as "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  Id. § 3553(a)(2)(A).

Nieves correctly notes that the District Court expressly stated in this case that the factors in § 3553(a)(2)(A) were part

of the reason that it handed down the revocation sentence that it did. As Nieves concedes, however, we have previously held that § 3583(e) "does not forbid [the] consideration of other pertinent section 3553(a) factors." United States v. Vargas-Dávila, 649 F.3d 129, 132 (1st Cir. 2011). And while Nieves argues that Vargas-Dávila (and cases following it) "held only that a revocation court is not prohibited from considering the 18 U.S.C. § 3553(a) factors that are omitted from 18 U.S.C. § 3583(e)(3)" (emphasis added), and so "did not consider whether it would be error to consider those omitted factors to the practical exclusion of other enumerated factors," the District Court here did not refer to only "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" in explaining the revocation sentence. 18 U.S.C. § 3553(a)(2)(A).

To that point, the District Court noted that this was "the third occasion of [Nieves's] revocation of his supervised release term" and that "he needs to be closely monitored in order to protect the community from his recurrent high-risk behavior." The District Court further noted that the revocation sentence was needed "to afford adequate deterrence, and to protect the public from further crimes by [Nieves]." See United States v. Tanco-Pizarro, 892 F.3d 472, 481 (1st Cir. 2018) ("As for Tanco-Pizarro's claim that the district court punished him for his new criminal

- 22 -

conduct, not for his breach of trust, the record shows otherwise. Among other things, the court noted that Tanco-Pizarro has shown zero ability to comply with the law and with his supervised-release conditions.").

Thus, we see no basis for concluding that the District Court relied on the § 3553(a)(2)(A) factors to the exclusion of the § 3583(e) factors. Accordingly, we discern no procedural error.

**B.**

Nieves appears to base his challenge to the substantive reasonableness of his revocation sentence in part on the fact that it is at the higher end of the applicable GSR and was imposed alongside sentences for his new offenses that were above the Guidelines range. But we conclude that this challenge also is without merit.

In reviewing whether a sentence imposed is substantively reasonable, we look to "the totality of the circumstances and ask whether the sentence is the product of a plausible rationale and a defensible result." United States v. Gaccione, 977 F.3d 75, 84 (1st Cir. 2020) (cleaned up). Here, Nieves's revocation sentence "is within the applicable Guidelines range . . . and so is presumptively reasonable." United States v. Reyes-Torres, 979 F.3d 1, 9 (1st Cir. 2020). Moreover, we have previously affirmed revocation sentences that were imposed alongside a sentence for

new offenses in which both sentences were above the Guidelines range. See, e.g., United States v. Flores-Quiñones, 985 F.3d 128, 132-35 (1st Cir. 2021).

Nieves separately contends that his revocation sentence is substantively unreasonable because "[t]he court's sentence took no consideration of [certain] circumstances" like the fact that "[i]t was not established that [Nieves] was in exclusive control of the premises that were searched," "[t]here is no evidence that [Nieves] ever had a firearm that could be used with the ammunition or with the chip," and that "[t]here is no indication that [Nieves] planned to use or had a realistic possibility of using that chip, or the ammunition." But, "as long as we discern a plausible explanation for the sentence and a defensible overall result, we will not second-guess the district court's informed judgment." Rodriguez, 525 F.3d at 110 (cleaned up).

Here, the District Court provided a plausible sentencing rationale based on this being the third revocation of Nieves's supervised-release term. The revocation sentence also was a defensible result, given the stated need to "closely monitor[ Nieves] in order to protect the community from his recurrent high-risk behavior, to reflect the seriousness of the offense, to promote respect for the law, provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes by [Nieves]." "That the sentencing court chose

not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011). Nor does the fact that the sentencing court did not sentence him "according to his counsel's recommendation." United States v. Mulero-Algarín, 866 F.3d 8, 13 (1st Cir. 2017) (quoting United States v. Butler-Acevedo, 656 F.3d 97, 101 (1st Cir. 2011)). Rather, the District Court made plain that it had considered Nieves's arguments and the relevant § 3553(a) mitigating factors because it expressly stated that it did. See United States v. Alejandro-Rosado, 878 F.3d 435, 439 (1st Cir. 2017) (affording weight to a District Court's explicit statement that it considered the § 3553(a) factors and heard the defendant's arguments).

**IV.**

For the reasons stated above, Nieves's prison sentences on his new offenses are **vacated**, and his revocation sentence is **affirmed**. The case is **remanded** for further proceedings consistent with this opinion.