# United States Court of Appeals
## For the First Circuit

No. 24-1834

UNITED STATES OF AMERICA,

Appellee,

v.

HECLOUIS JOEL NIEVES-DÍAZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Aframe, Circuit Judges.

Celso Javier Pérez Carballo, Assistant Federal Public
Defender, with whom Rachel Brill, Federal Public Defender, and
Franco L. Pérez-Redondo, Assistant Federal Public Defender,
Supervisor, Appellate Unit, were on brief, for appellant.

Maarja T. Luhtaru, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Juan Carlos
Reyes-Ramos, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

April 14, 2026

**AFRAME**, **Circuit Judge**.  During the execution of a search warrant at the apartment where Heclouis Joel Nieves-Díaz was residing, the Puerto Rico police found drugs, ammunition, and a machine gun conversion device, which resulted in his guilty plea to federal drug and firearm charges.  Nieves received an eighty-four-month prison sentence, which he successfully appealed.  On remand, the district court resentenced Nieves to sixty-six months' imprisonment, which was twenty-five months above the top of the new United States Sentencing Guidelines range ("GSR") applicable to his second sentencing.  Nieves appeals again, arguing, among other things, that the district court failed to adequately explain the basis for the upward variance.  We agree and therefore vacate the sentence.

## I.

In 2013, Nieves pleaded guilty to conspiring to distribute drugs, 21 U.S.C. §§ 841(a)(1), 846, and 860.  As part of that conspiracy, Nieves "possessed firearms while he was acting as a seller for the [drug trafficking] organization."  He received an eighty-month prison sentence that was later reduced to fifty-seven months.  Nieves's sentence also included a term of supervised release that was twice revoked for various violations, including his failure to report to the probation office and his use of controlled substances.  Nieves's second revocation sentence ended on May 15, 2020.

- 2 -

Five months later, on October 13, 2020, Puerto Rico police officers executed a search warrant at an apartment in San Juan where Nieves was residing. Before executing the warrant, officers observed apparent drug transactions occurring at the apartment. During the search, the officers found, among other items, approximately 149 rounds of .223 caliber ammunition in a Ziploc bag in the kitchen; a machine gun conversion device, also known as a "chip"; and approximately 849 small plastic baggies of cocaine. As a result, Nieves was charged with and pleaded guilty to (1) being a felon in possession of ammunition, 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) illegal possession of a part designed to convert a semi-automatic weapon into a machine gun, 18 U.S.C. §§ 922(o) and 924(a)(2); and (3) possession with intent to distribute cocaine, 18 U.S.C. § 841(a)(1), (b)(1)(C). Nieves was on supervised release when he committed these crimes.

The presentence investigation report ("PSR") calculated Nieves's total offense level to be twenty-three, his criminal history to be category III, and his resulting GSR to be fifty-seven to seventy-one months' imprisonment. The total offense level resulted in part from the application of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), which applies "[i]f the defendant . . . used or possessed any firearm or ammunition in

- 3 -

connection with another felony offense."[1]  Id.  At sentencing, the government pressed for a mid-GSR sentence of sixty-six months' imprisonment.  As relevant here, Nieves objected to applying the just-mentioned enhancement and sought a thirty-seven-month sentence.  The district court applied the enhancement, adopted the PSR's proposed GSR, and sentenced Nieves to eighty-four months' imprisonment, an upward variance of thirteen months.

Nieves appealed, and we vacated the sentence because the district court erroneously applied the enhancement since there was no basis for finding that the ammunition potentially facilitated the drug trafficking offense.  United States v. Nieves-Díaz (Nieves I), 99 F.4th 1, 9 (1st Cir. 2024).  We also cautioned that an upward variance on remand would require either a "case-specific explanation" or "explicit[] rel[iance] on . . . [a] policy disagreement" with the sentencing guidelines.  Id. at 10 n.3.

At resentencing, the amended PSR now calculated Nieves's GSR as thirty-three to forty-one months' imprisonment based on a total offense level of nineteen and a criminal history category of II.[2]  The district court adopted the PSR's recommended GSR and

---

[1]  The November 1, 2023 edition of the Sentencing Guidelines manual was used to calculate Nieves's GSR.  The enhancement for using or possessing a firearm in connection with another felony offense was later moved from § 2K2.1(b)(6)(B) to § 2K2.1(b)(7)(B).

[2]  The criminal history category decreased because Nieves no longer received criminal history points for committing the

- 4 -

sentenced Nieves to sixty-six months' imprisonment, an upward variance of twenty-five months, or approximately sixty-one percent above the top of the applicable GSR.

In fashioning the sentence, the district court stated that it had reviewed the amended PSR, this Court's opinion in Nieves I, and the parties' sentencing memoranda and oral arguments. It concluded that Nieves demonstrated a "pattern of conduct which is representative of a lack of regard for the law" such that an upward variance was warranted. In reaching this conclusion, the court relied on Nieves's "criminal history, the large quantity of ammunition he possessed and the [amount] of gun violence in the community where . . . Nieves committed his offense." Specifically, the court expressed additional concern about Nieves's recidivism and "the speed with which he reoffends." And it further noted that the apartment in which Nieves was arrested had been used for drug trafficking. Regarding the ammunition, the court referenced United States v. Polaco-Hance, 103 F.4th 95 (1st Cir. 2024), and United States v. Gonzalez-Flores, 988 F.3d 100 (1st Cir. 2021), to support its view that the GSR did not account adequately for the 149 rounds of ammunition at issue. Finally, the court observed that the prevalence of gun crime in Puerto Rico

---

offense while on supervised release based on a subsequent guidelines amendment. See U.S.S.G. app. C, Amend. 821 (Supp. 2023).

warranted a sentence that imposed "additional deterrence." Nieves objected that the sentence was procedurally and substantively unreasonable. He now appeals, requesting remand to another judge for resentencing.

**II.**

We consider a sentencing challenge by first addressing procedural reasonableness. United States v. Flores-Quiñones, 985 F.3d 128, 133 (1st Cir. 2021). "We review preserved challenges [to a sentence] for abuse of discretion . . . ." United States v. Cruz-Ramos, 987 F.3d 27, 44 (1st Cir. 2021). Nieves's claim of procedural error rests on his contention that the district court did not adequately justify or individualize the upward variance it imposed based on the quantity of ammunition he possessed, his criminal history, and the high gun-crime rate in Puerto Rico.

A district court's decision on whether to impose a variance and the extent of any such variance is a judgment call which we review for reasonableness. See United States v. Nelson, 793 F.3d 202, 207 (1st Cir. 2015). Our review requires that the district court provides a sufficient explanation for its decision so that we may determine whether the court's focus on a particular aspect of the case was an appropriate variance consideration. United States v. Pupo, 995 F.3d 23, 28 (1st Cir. 2021) (stating that a sentencing court commits a procedural error by, inter alia, "failing to adequately explain the chosen sentence -- including an

- 6 -

explanation for any deviation from the [GSR]" (quoting United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020))).

Here, the district court merged Nieves's past record, the ammunition quantity, and the abundance of gun crime in Puerto Rico to settle on a variance that was twenty-five months above the top of the GSR. Because there is nothing in the sentencing record to suggest otherwise, we assume that without the presence of one of these factors, the court may have imposed a shorter sentence. Accordingly, to review the variance decision, we require an adequate explanation for why each of the reasons given was an appropriate ingredient in the variance mix. Unfortunately, the court's explanation for its reliance on the amount of ammunition was too spartan to permit the necessary review.

Pertaining to ammunition amount, the district court stated:

> [T]he guideline range does not take into account the amount of ammunition that Mr. Nieves possessed, specifically 149 rounds of .223 caliber ammunition, for an assault rifle[.] [P]ursuant to the following cases: United States v. Polaco-Hance[,] 103 F.4th[] 95[,] and United States v. Gonzalez-Flores, 988 F.3d 100, a [s]entencing [c]ourt may consider the quantity of ammunition when determining an appropriate sentence especially, as in this case, [when] the guidelines do not account for the amount of ammunition[.]

On appeal, Nieves contends that his sentence was unjustified because the court overlooked his primary argument that the

ammunition posed no danger in the circumstances here because Nieves did not possess a firearm.

While ammunition quantity may support an upward variance, to rely on it, the district court must "clearly identif[y] the amount of ammunition . . . as [a] sentencing rationale[]" and ensure that the "explanation is commensurate with the magnitude of variance." United States v. Mercado-Cañizares, 133 F.4th 173, 182-83 (1st Cir. 2025). "We have held repeatedly that the amount of ammunition[,] . . . at least in a range consistent with the amount . . . present in this case, can be [a] valid bas[i]s for an upward variance for firearms offenses." Polaco-Hance, 103 F.4th at 101 (involving 111 rounds of ammunition). We have done so because "concerns about the seriousness of such firepower and such substantial quantities of ammunition . . . suffice[] to remove [a] case from the heartland of the relevant guidelines." United States v. Maldonado-Velazquez, 164 F.4th 154, 159 (1st Cir. 2026) (alterations in original) (quoting United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020)).

Some of our cases affirming an upward variance based on the amount of ammunition have rested on the seriousness of the firepower, or, otherwise stated, the dangerousness posed by the additional rounds in the circumstances presented. See, e.g., United States v. García-Mojica, 955 F.3d 187, 193 (1st Cir. 2020)

- 8 -

(stating that extra ammunition "contributed to the lethalness of the automatic weapon"); United States v. Contreras-Delgado, 913 F.3d 232, 243 (1st Cir. 2019) (noting a "substantial amount of ammunition and multiple high-capacity magazines[] heighten[ed] the risk posed to the public"). Others center instead on the district court's finding that there were substantial quantities of ammunition, see, e.g., United States v. Morales-Vélez, 100 F.4th 334, 344 (1st Cir. 2024), or on its discussion of "specific features of the ammunition," United States v. Santa-Otero, 843 F.3d 547, 550 (1st Cir. 2016) (involving loaded magazines). In each case, regardless of the district court's rationale, the defendant also possessed a firearm. Thus, Nieves's case presents a novel circumstance in which a substantial quantity of ammunition was found without a corresponding firearm.

Nieves contends the district court ignored his "principal argument" that the lack of a corresponding firearm means that the ammunition was not dangerous in the circumstances of his case. The district court, in explaining the sentencing rationale, did not address Nieves's argument specifically or even describe more generally what aspect of the ammunition quantity motivated it to view quantity as a variance factor. See United States v. Colón-Cordero, 91 F.4th 41, 56 (1st Cir. 2024) (requiring district court to engage with defendant's "dominant" argument at sentencing). In particular, the court did not explain whether it was the

ammunition's potential danger, the sheer amount of ammunition, or some other case-specific factor about the ammunition's presence that helped remove the case from the guidelines' heartland. "Given the marked extent of the variance, we are reluctant to guess at what the court was thinking," especially where there are multiple possibilities that could lead to different reasonableness analyses. United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016). Because we cannot discern the court's reason for relying on ammunition amount as a variance factor, we conclude that there was a procedural error in Nieves's sentencing. See id.

In reaching this conclusion, we do not accept Nieves's argument that Nieves I prohibits the district court from relying on ammunition amount as a possible upward variance consideration. To support his view, Nieves refers to our conclusion in his earlier appeal that the government did not show the ammunition's role in facilitating his drug trafficking offense. See Nieves I, 99 F.4th at 8-9. But Nieves overreads our prior decision. We considered there only whether the court correctly applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Id. at 7-10. We did not address whether an upward variance could be justified, in part, because of the ammunition quantity involved in the offense. Similarly, our holding here should not be read to express a view on whether a court reasonably could view the ammunition amount as a variance factor in the circumstances of this case. We hold only

that the district court failed to identify the reason that ammunition quantity represented an aggravating factor in this circumstance, where there was no compatible firearm, and that omission precludes us from reviewing its determination for reasonableness.

We recognize that our conclusion about the district court's inadequate explanation about ammunition quantity means that we must send this case back for a third sentencing hearing. To simplify matters on remand, we address Nieves's argument that the district court improperly relied on his criminal history as one of the variance considerations.

At resentencing, the district court explained its basis for relying on Nieves's prior record to enhance his sentence. It noted that Nieves reoffended while serving a term of supervised release that had already been twice-revoked; that he was arrested "mere months" after being released; that his "prior offenses involved both the selling [of drugs] and the possession of firearms";[3] and that his history demonstrated a "pattern of drug trafficking and weapons offenses."

To challenge the district court's reliance on his prior record, Nieves first disputes that he has a history of drug and

---

[3] After a colloquy with the prosecutor, the court agreed with the government that Nieves sold drugs and possessed firearms, and that he had not sold firearms.

firearms offenses.  He admits, however, that he has a prior federal drug conviction and that he possessed firearms during that offense. Nieves now contends that the court "appeared to believe" incorrectly that he previously had been convicted of a firearms offense.  But we do not see any indication of such a mistake from our own review.  And even if we accept that the court erroneously thought Nieves had a prior firearms conviction, we fail to see prejudice from any misunderstanding given that firearm possession was relevant conduct for Nieves's past drug-trafficking conviction.  In either case, the court was justified in having concern about Nieves possessing firearms while engaging in drug trafficking, which we understand to be the court's rationale for relying on his prior offense.  See, e.g., United States v. Bermúdez-Meléndez, 827 F.3d 160, 164 (1st Cir. 2016) (noting that it "ma[d]e matters worse" that a defendant possessed firearms "in close proximity to a trove of illegal drugs").

Next, Nieves contends that the district court overstated the importance of his supervised release violations because these violations were merely "technical" in nature (e.g., violating the restriction on drug use and the requirement that he report to the probation officer as directed).  We reject that view.  The court appropriately expressed concern that Nieves presented an "unreasonably high" likelihood of recidivism, based on "the speed with which he reoffends."  That concern is justified regardless of

how Nieves chooses to characterize his supervised release violations. Nieves knew the supervised release restrictions placed on him and did not follow them. That presents a concern that Nieves will recidivate, which can support an upward variance. See United States v. Fargas-Reyes, 125 F.4th 264, 274-76 & n.16 (1st Cir. 2025) (affirming thirty-three-month upward variance where defendant possessed large amounts of ammunition just three months after leaving prison on supervised release for a previous machine gun offense); Polaco-Hance, 103 F.4th at 102 ("[A] district court does not abuse its discretion by imposing an upward variance for repeated criminal activity that occurs shortly into an individual's supervised release term.").[4] We therefore conclude that, on remand, the district court may reasonably rely on Nieves's prior record as a consideration in any variance calculus.[5]

---

[4] Nieves also makes an argument that, even if his prior record is a relevant consideration, it does not support the extent of the variance imposed. Because we are vacating the sentence and do not know whether the court will impose a variance or, if it does, the length of any such variance, we do not consider this argument today.

[5] Concerning the district court's reliance on community factors, we note that a district court may "emphasize[] community factors" so long as it does not come "at the expense of also weighing the specific circumstances of [the defendant's] case." Polaco-Hance, 103 F.4th at 103 (quoting, in part, United States v. Zapata-Vázquez, 778 F.3d 21, 24 (1st Cir. 2015)). In looking to community factors in otherwise appropriate circumstances, a court is not required to find that a defendant personally contributed to actual violence in the community. See United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013) ("[T]he incidence

- 13 -

Nieves makes two closing requests. First, he asks that we also address his substantive reasonableness arguments and remand with instructions limiting the upward variance to thirteen months. Second, he contends that we should remand his case to a different judge for resentencing. We decline both requests.

In making his first request, Nieves acknowledges that we ordinarily address procedural reasonableness before substantive reasonableness. He nevertheless asserts that a "proper remedy" here would entail addressing both reasonableness prongs. Nieves, however, does not offer, and we do not see, any reason why we should evaluate the substantive reasonableness of the vacated sentence. See, e.g., United States v. Carrasquillo-Sánchez, 9 F.4th 56, 62-63 (1st Cir. 2021) (remanding after finding procedural error).

Nor would it be appropriate to remand with instructions to cap the possible sentence in these circumstances. That is because generally "[s]entencing is the province of the district court," not this Court. United States v. Helton, 782 F.3d 148, 151 (4th Cir. 2015). Instructing a district court on remand to impose a specific sentence is an "extraordinary" remedy that "deprive[s] the trial court of its discretion in sentencing."

of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence.").

- 14 -

United States v. Mojica-Ramos, 103 F.4th 844, 854 (1st Cir. 2024) (quoting United States v. Kurkculer, 917 F.2d 295, 299 (1st Cir. 1990)). We think that remanding with instructions about the upper limit on the sentence similarly hobbles the district court's exercise of discretion. As we have discussed supra, we are not precluding the possibility that the court could impose a variance similar in length to the one on review here; we are holding only that the court did not adequately explain its basis for doing so. Cf. United States v. Rivera-Berríos, 968 F.3d 130, 137 (1st Cir. 2020) (limiting sentence on remand to be within the GSR where "the record reveals no circumstance that could justify an upwardly variant sentence").

Finally, we do not order the reassignment of the case. Because "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand," Yosd v. Mukasey, 514 F.3d 74, 78 (1st Cir. 2008) (alteration in original) (quoting Liteky v. United States, 510 U.S. 540, 551 (1994)), requests to be resentenced by a different judge are granted "only in very unusual cases." United States v. Vázquez-Méndez, 915 F.3d 85, 88 (1st Cir. 2019). These rare cases can occur when the original judge (1) based the sentence on unreliable or inaccurate information or (2) displayed entrenched bias. See Colón-Cordero, 91 F.4th at 58; United States v. Castillo-Torres, 8 F.4th 68, 73 (1st Cir. 2021). This case does not involve either consideration.

- 15 -

Nieves contends that the district court would have difficulty putting aside his previous views on the case because the judge was erroneously fixated on the dangerousness of machineguns during both earlier sentencing hearings. But the comments made by the district court did not rely on "off-record evidence" or incorrectly assess the facts such that reassignment would be warranted. See United States v. Alvira-Sanchez, 804 F.3d 488, 496 (1st Cir. 2015). Rather, they appear to be the kind of judicial rulings or opinions that alone do not suggest bias or partiality. See id. (explaining that district court's discussion of case-specific factors did not evince bias); cf. Liteky, 510 U.S. at 555 (involving judicial recusal).

As Nieves recognizes through his own citations, in cases where a sentencing judge fails to sufficiently explain an upward variance, we typically remand without reassignment. See, e.g., United States v. Muñoz-Fontanez, 61 F.4th 212, 215 (1st Cir. 2023). This is a typical case, and so we decline to order reassignment.

**IV.**

For the reasons stated, we **vacate** the sentence. The case is remanded for further proceedings consistent with this opinion.