# United States Court of Appeals
## For the First Circuit

No. 21-1264

UNITED STATES OF AMERICA,

Appellee,

v.

ANDY G. MORALES-VÉLEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo and Rikelman, Circuit Judges.

Alejandra Bird-López, Research & Writing Specialist, with whom Eric Alexander Vos, Federal Public Defender, District of Puerto Rico, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor of Appeals Division, were on brief, for appellant.

Ricardo A. Imbert-Fernández, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief of Appellate Division, and Gregory B. Conner, Assistant United States Attorney, were on brief, for appellee.

May 3, 2024

**RIKELMAN, <u>Circuit Judge</u>.** Andy G. Morales-Veléz ("Morales") appeals from two rulings related to his guilty plea for possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). First, Morales contends that his 120-month sentence of imprisonment is both procedurally and substantively unreasonable because the district court did not provide adequate justification for imposing a higher sentence than that recommended by the U.S. Sentencing Guidelines. Second, he argues that the district court erred by refusing to consider his Federal Rule of Criminal Procedure 41(g) motion to return $20,000 in cash the government seized from his vehicle during his arrest. After careful consideration, we affirm Morales's sentence. Additionally, because Morales has reached a settlement with the government over the seized $20,000, we conclude that his claims regarding the Rule 41(g) motion are moot.

## I. BACKGROUND[1]

On September 18, 2019, without a warrant, law enforcement agents entered and searched Morales's home. Although the parties contest the circumstances that led to the search and

---

[1] "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report" ("PSR"), and the transcript of the sentencing hearing. <u>United States</u> v. <u>Melendez-Rosado</u>, 57 F.4th 32, 36 (1st Cir. 2023).

the conditions in the home when the police first entered,[2] the results of the search are not in dispute and no challenge to that search is at issue in this appeal. During the search, the police found bricks of cocaine in Morales's home. A subsequent search of Morales's car revealed a nine-millimeter pistol which was modified to fire in fully automatic mode,[3] two regular capacity gun magazines and two high-capacity gun magazines that collectively contained approximately 125 rounds of ammunition, and $20,000 in cash.

A grand jury indicted Morales on four counts: (1) possession of a firearm and ammunition as a convicted felon in

---

[2] The record includes three distinct versions of these events: the initial law enforcement account used to support the criminal complaint; Morales's account used to support his motion to suppress the results of the search; and the stipulation of facts included in the plea agreement, which Morales disavows. Despite the significant variation in these accounts, the parties' dispute about what led up to Morales's arrest does not impact the issues at stake on appeal, and so we need not resolve it.

[3] A fully automatic pistol is considered a machine gun for the purposes of the statute at issue here, 18 U.S.C. § 924(c). United States v. O'Brien, 542 F.3d 921, 922 n.1 (1st Cir. 2008) ("Although the definitional section governing section 924(c) does not separately define machine-gun, the term has been widely taken to mean a fully automatic weapon that fires continuously with a single pull on the trigger."), aff'd, 560 U.S. 218 (2010); cf. United States v. Pérez-Greaux, 83 F.4th 1, 13 (1st Cir. 2023) ("A 'machinegun,' as defined by [18 U.S.C.] § 921(a)(24), which borrows the definition of a machinegun from the National Firearms Act, is 'any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.'" (quoting 26 U.S.C. § 5845(b))).

violation of 18 U.S.C. § 922(g)(1); (2) possession of a machine gun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and (B)(ii); (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii). Pursuant to a plea agreement, Morales pleaded guilty to only one of the charges, possession of a firearm in furtherance of a drug trafficking crime. See 18 U.S.C. § 924(c)(1)(A)(i). The government dismissed the other charges, and the parties agreed to recommend an upwardly variant sentence of ninety-six months' imprisonment.

The plea agreement also contained a clause requiring Morales to forfeit the items seized during his arrest, but, at Morales's request, the clause excluded the $20,000 found in his car. Morales filed a pre-sentencing motion to return property pursuant to Rule 41(g), alleging that the $20,000 represented legitimate lottery winnings and accordingly was not subject to forfeiture. The government opposed the motion, arguing that it already had commenced a separate civil forfeiture proceeding against the money, and the district court denied Morales's motion on that basis.

At the sentencing hearing, the district court began by recounting the charge against Morales and explaining that the

guideline recommendation for his offense was the statutory minimum of sixty months. See 18 U.S.C. § 924(c)(1)(A)(i); U.S.S.G. § 2K2.4(b). The court then briefly discussed Morales's criminal history and prior drug distribution convictions, age, educational background, and current employment status.

Turning to Morales's offense conduct, the court noted that a "modern machine gun can fire more than a thousand rounds [per minute]" and is capable of killing "dozens of people within a matter of seconds." The court also opined that it could "conceive of few weapons that are more dangerous than machine guns," explained that "outside of a few Government-related uses, machine guns exist largely on the black market," and concluded that, "[i]n short, machine guns are highly dangerous and unusual weapons that are not typically possessed by law-abiding citizens for lawful purposes." Addressing the ammunition found in Morales's vehicle, the court described the four magazines containing 125 rounds of ammunition. The court also observed that the type of ammunition was known as "radically invasive projectile" rounds or "RIP" rounds.[4]

---

[4] Although the district court noted that Morales possessed "approximately 125 rounds of 9mm RIP ammunition," the government stated that Morales possessed "a large amount of ammunition, some of which was . . . RIP [ammunition]." (Emphasis added.) The PSR confirmed that the rounds loaded in the machine gun were "RIP" rounds but did not comment on the nature of the other ammunition found with the gun.

- 6 -

Ultimately, the court found that, "[b]ased on the fact that Mr. Morales possessed not only a machine gun but four magazines, [two] of which were high capacity, and 125 rounds of radically invasive projectiles," the parties' proposed ninety-six-month sentence "[did] not reflect the seriousness of the offense, [did] not promote respect for the law, [did] not protect the public from further crimes by Mr. Morales, and [did] not address the issues of deterrence and punishment." The district court instead imposed a sentence of 120 months.

Before sentencing concluded, Morales renewed his objection to the district court's denial of his Rule 41(g) motion, arguing that the criminal case was still the appropriate venue through which to consider Morales's claims. Morales also emphasized that in a civil forum he had no right to counsel and would have difficulty navigating the forfeiture proceedings as a pro se litigant, given his impending imprisonment. The district court explained that because the civil forfeiture action was ongoing, it would continue to deny the Rule 41(g) motion. However, as the presiding judge in the civil case as well, the district court allowed an attorney from the Office of the Federal Public Defender to serve as counsel to Morales in the forfeiture action. This timely appeal followed.

## II. DISCUSSION

### A. Variant Sentence

On appeal, Morales argues that the district court did not provide adequate explanation or justification for his 120-month sentence, rendering it both procedurally and substantively unreasonable. We typically review claims of sentencing error in a two-step process. United States v. Flores-Nater, 62 F.4th 652, 655 (1st Cir. 2023). At the first step, we consider if the sentence is procedurally reasonable. United States v. Carvajal, 85 F.4th 602, 609 (1st Cir. 2023). Then, if the sentence "passes procedural muster," we consider "any claim of substantive unreasonableness." United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020). At both steps, we review preserved claims for abuse of discretion, a flexible standard that permits us to examine the sentencing court's factual findings for clear error, evaluate its legal conclusions de novo, and give deference to its judgment calls. United States v. Colón-Cordero, 91 F.4th 41, 48 (1st Cir. 2024).

It is unclear whether Morales, in arguing that the district court failed to provide an adequate justification for his upwardly variant sentence, lodges a procedural reasonableness challenge, a substantive reasonableness challenge, or both. The government treats him as having raised both types of challenges,

and we see no reason to do otherwise.  We proceed to consider each of his arguments.

## 1. Procedural Reasonableness

A sentencing judge is charged with "stat[ing] in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c).  If the court determines "an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall v. United States, 552 U.S. 38, 50 (2007).  The extent of explanation required "depends on the context of each individual case, but sentencing courts must say enough to show an appellate court they 'considered the parties' arguments and had a reasoned basis for exercising their own legal decisionmaking authority.'" Colón-Cordero, 91 F.4th at 50-51 (cleaned up) (quoting Rita v. United States, 551 U.S. 338, 356 (2007)).  If a court chooses to impose an upwardly variant sentence, its duty of explanation "increases in proportion to the extent of the court's deviation from the guideline range: the greater the deviation, the greater the burden of justifying the sentence imposed." United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016).  Further, the court's rationale must be "rooted either in the nature and circumstances of the offense or the characteristics of the

offender." Flores-Nater, 62 F.4th at 656-57 (quoting United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008)).

Here, the guidelines do not provide a sentencing range; rather, the guideline recommendation is the statutory minimum sentence. See United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015). In the case of possession of a firearm in furtherance of a drug trafficking crime, the statutory minimum sentence is sixty months, making Morales's 120-month sentence of imprisonment twice as long as the guideline recommendation. See 18 U.S.C. § 924(c)(1)(A)(i); U.S.S.G. § 2K2.4(b). Although the parties agreed to recommend an upwardly variant ninety-six-month sentence, "the starting point for a court's sentencing determination is the guideline range, not the parties' recommendations." United States v. Cortés-Medina, 819 F.3d 566, 573 (1st Cir. 2016). Accordingly, in evaluating the reasonableness of Morales's variant sentence, we compare the variance to the guideline sentence, not the sentence recommended by the parties.

The district court provided three bases for Morales's sentence: the machine gun possession; the amount of ammunition, including the fact that Morales possessed four magazines; and the type of ammunition. Morales contends that none of these factors, alone or in combination, could support a variance of such magnitude. We disagree.

Morales first argues that the district court's finding that machine guns are "highly dangerous and unusual weapons" cannot support the upward variance because the sixty-month guideline sentence already accounts for the particular dangerousness of a machine gun. See Flores-Nater, 62 F.4th at 657 ("[T]he upward variance must rest on more than factors already accounted for in the guideline calculus." (citing United States v. Rivera-Berríos, 968 F.3d 130, 136 (1st Cir. 2020))). In particular, he points to our decisions in United States v. Rivera-Berríos, United States v. García-Pérez, and United States v. Carrasquillo-Sánchez, where we held that "[t]he factor relied on by the district court -- that the offense involved a machine gun -- was already fully accounted for in the guideline calculus." Rivera-Berríos, 968 F.3d at 135-36; see also United States v. García-Pérez, 9 F.4th 48, 53 (1st Cir. 2021); United States v. Carrasquillo-Sánchez, 9 F.4th 56, 59 (1st Cir. 2021).

But Morales is wrong that the guideline applicable here, section 2K2.4(b), accounts for the nature of machine guns in the recommended sentence. Crucially, in all three cases cited by Morales, the defendants pleaded guilty to violations of 18 U.S.C. § 922 and were consequently sentenced under U.S.S.G. § 2K2.1. See Rivera-Berríos, 968 F.3d at 133, 135; García-Pérez, 9 F.4th at 50-51; Carrasquillo-Sánchez, 9 F.4th at 57-58. The statutory regimes underpinning sections 2K2.4(b) and 2K2.1, and the text of

- 11 -

the guidelines themselves, are fundamentally different. Accordingly, our analysis of each guideline yields a different result.

Section 2K2.1 of the guidelines, which does not apply to Morales's offense, employs a definition of "firearm" that explicitly includes machine guns. As we explained in a previous decision:

> In pertinent part, [section 2K2.1(a)(4)(B)] directs a base offense level of twenty if the "offense involved" a "firearm that is described in 26 U.S.C. § 5845(a)" and the defendant was a "prohibited person" at the time of the offense. In turn, 26 U.S.C. § 5845(a) includes "machinegun" in its definition of "firearm," and section 5845(b) defines a machine gun as "any weapon which shoots . . . automatically more than one shot, without manual reloading, by a single function of the trigger."

Rivera-Berríos, 968 F.3d at 135. Thus, concerns about "the dangers posed by machine guns and the defendant's lack of need for such a weapon" are relevant to all machine gun crimes sentenced under section 2K2.1, and "we have [had] no reason to believe that [those concerns] were not factored into the mix when the Sentencing Commission set the base offense level for the offense of conviction." Carrasquillo-Sanchez, 9 F.4th at 59 (quoting Rivera-Berríos, 968 F.3d at 136).

By contrast, Morales pleaded guilty to a violation of 18 U.S.C. § 924(c)(1)(A)(i) and was sentenced under a different

- 12 -

guideline, section 2K2.4(b).  Section 924(c)(1)(A)(i) makes it a crime to "use[] or carr[y] a firearm" in furtherance of a drug trafficking crime.  18 U.S.C. § 924(c)(1)(A)(i).  And section 2K2.4(b) sets the guideline sentence as the statutory minimum of the charged § 924(c) offense.  See U.S.S.G. § 2K2.4(b) ("[I]f the defendant . . . was convicted of violating section 924(c) . . . the guideline sentence is the minimum term of imprisonment required by statute.").

Critically, 18 U.S.C. § 924(c) as a whole makes clear that the term "firearm" in § 924(c)(1)(A)(i), the offense to which Morales pleaded guilty and which carries a five-year mandatory minimum sentence, does not specifically account for machine guns.  18 U.S.C. § 924(c).  That is because the very next section of the statute explicitly discusses machine guns and provides for a much higher sentence -- thirty years minimum -- if one is involved.  See id. at § 924(c)(1)(B)(ii) ("If the firearm possessed by a person convicted of a violation of this subsection . . . is a machinegun . . . the person shall be sentenced to a term of imprisonment of not less than 30 years.").  "[W]e do not lightly assume Congress adopts two separate clauses in the same law to perform the same work."  United States v. Taylor, 596 U.S. 845, 857 (2022).  For this reason, we read the plain language of § 924(c) to indicate that Congress intended the punishment to be more severe for possession of a machine gun and drafted

§ 924(c)(1)(B)(ii) to give effect to that purpose. Thus, the five-year sentence required by § 924(c)(1)(A)(i), the charge Morales pleaded guilty to, necessarily does <u>not</u> account for the unique dangers of a machine gun.[5]

---

[5] In relevant part, 18 U.S.C. § 924(c) provides:

> **(c)(1)(A)** Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> > **(i)** <u>be sentenced to a term of imprisonment of not less than 5 years</u>;
> >
> > **(ii)** if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
> >
> > **(iii)** if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
>
> **(B)** If the firearm possessed by a person convicted of a violation of this subsection--
>
> > **(i)** is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or
> >
> > **(ii)** <u>is a machinegun</u> or a destructive device, or is equipped with a firearm

- 14 -

Accordingly, when a defendant is convicted under § 924(c)(1)(A)(i) and sentenced under section 2K2.4(b), neither the statute nor the applicable guideline accounts for the nature of machine guns, and the district court did not legally err in considering this factor in its upward variance analysis. Morales's arguments to the contrary are not persuasive, given the text of the relevant statute and guideline.

Further, as Morales concedes, the district court did not rely exclusively on the nature of machine guns to support its upward variance but also based its sentence on the amount and type of ammunition found with the gun.  For that additional reason, this case is different from Rivera-Berríos, 968 F.3d at 136, García-Pérez, 9 F.4th at 54-55, and Carrasquillo-Sánchez, 9 F.4th at 62, where we found no other legally valid basis for the upward variance.  See United States v. Santa-Otero, 843 F.3d 547, 550 (1st Cir. 2016) (upholding a sentence where the district court "did not rely solely upon [defendant's] possession of the machine gun in imposing the variant sentence" but also "cited to specific features of the ammunition that [defendant] possessed").

---

silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

(Emphases added).

- 15 -

Morales nevertheless argues that the amount of ammunition found with his firearm does not justify the extent of the upward variance. Our precedent is clear that sentencing courts may consider the amount of ammunition to be an aggravating factor, one not already accounted for by the guidelines, if the amount exceeds what is consistent with simple possession. See, e.g., United States v. Rivera-Santiago, 919 F.3d 82, 85-86 (1st Cir. 2019) (upholding an eleven-month upward variance because the sentencing court's reliance on "a stash of large-capacity magazines and ammunition," among other factors, "differentiate[d defendant's] offense from the 'run-of-the-mill' felon-in-possession offense contemplated by the guidelines"); United States v. García-Mojica, 955 F.3d 187, 193 n.7 (1st Cir. 2020) ("The Guidelines do not take into consideration the extra ammunition [defendant] was carrying when apprehended.").

Morales does not contest the general principle that large amounts of ammunition can be a basis for an upward variance. Rather, citing our decision in Rivera-Berríos, he contends as a factual matter that 125 rounds of ammunition is not a "large cache of ammunition" and is "entirely consistent with simple possession of a machine gun." 968 F.3d at 135.

But given our precedent, Morales has failed to demonstrate an abuse of discretion on this point as well. We have previously affirmed sentences where the district court relied on

similar amounts of ammunition as one basis for its upward variance. See, e.g., United States v. Bruno-Campos, 978 F.3d 801, 804, 806 (1st Cir. 2020) (characterizing eighty-nine rounds of ammunition "packed into four separate magazines" as "a substantial amount of ammunition"); Rivera-Santiago, 919 F.3d at 83, 85-86 (explaining the sentencing court relied on two empty large-capacity magazines and 127 rounds of ammunition as one basis for an upward variance). Additionally, Morales possessed more than three times the amount of ammunition we found "consistent with simple possession of a machine gun" in Rivera-Berríos. 968 F.3d at 133, 135 (noting the defendant possessed thirty-six rounds of ammunition). Further, at sentencing, Morales presented none of the evidence he cites on appeal to demonstrate that possession of 125 rounds of ammunition was "consistent with simple possession of a machine gun." Id. at 135. Certainly, without an evidentiary showing to the contrary, the district court did not abuse its discretion by ruling consistently with our existing case law.

Finally, Morales argues that his upward variance could not be based on the type of bullets he possessed, as there is no evidence in the record that "RIP" bullets are "more lethal, dangerous, or inhumane than other ordinary commercially available bullets." On this point, we agree. At sentencing, the only information the district court had on the nature of RIP bullets was the prosecutor's statement that the bullets "are designed to

fracture upon impact" and "make multiple penetrations into the target." This statement by an attorney is not evidence, and, with no citation to authority, is not "information hav[ing] sufficient indicia of reliability to support its probable accuracy," as required by U.S.S.G. § 6A1.3(a). See United States v. Mills, 710 F.3d 5, 15 (1st Cir. 2013) ("[T]he [sentencing] court can consider all kinds of relevant information regardless of admissibility at trial . . . provided it has 'sufficient indicia of reliability to support its probable accuracy.'" (quoting U.S.S.G. § 6A1.3(a))).

The government alleges that Morales "made no challenge to the government's statement that these were particularly lethal rounds or the court's acceptance of that point" below, and that he raises this objection for the first time on appeal. As a result, the government argues, Morales has forfeited any challenge to this basis for his sentence. Morales counters that he preserved this argument when his counsel stated at the close of sentencing that he "is no different than other people that have machine guns and high capacity magazines." However, "[a] general objection to the procedural reasonableness of a sentence is not sufficient to preserve a specific challenge to any of the sentencing court's particularized findings." United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017). Therefore, this statement, which did not mention RIP ammunition at all, was not "sufficiently specific to call the district court's attention to the asserted"

- 18 -

absence of record support for a factual finding that this ammunition was particularly lethal. Id. As a result, our review of this argument is for plain error. See id. However, Morales "fails to even mention plain error, let alone argue for its application here," and that failure "definitively waives these arguments." United States v. Benjamin-Hernandez, 49 F.4th 580, 585 (1st Cir. 2022).

Thus, the district court's explanation, on the record here, was "sufficient to satisfy the statutory mandate." See Díaz-Lugo, 963 F.3d at 156-57.

### 2. Substantive Reasonableness

The substantive reasonableness inquiry "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Soto-Soto, 855 F.3d at 450 (quoting Gall, 552 U.S. at 51). As we have explained, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011). Accordingly, we must determine if Morales's 120-month sentence "falls within this broad universe." United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020). We conclude that it does.

The "hallmarks of a substantively reasonable sentence" are well established: "a plausible sentencing rationale and a defensible result." United States v. Rodríguez-Cruz, 997 F.3d

362, 366 (1st Cir. 2021). Here, the first prong is met, given our analysis thus far. "[A]n adequate explanation for an upwardly variant sentence and the 'plausible rationale' element of the test for substantive reasonableness 'are almost always two sides of the same coin.'" United States v. Ortiz-Pérez, 30 F.4th 107, 113 (1st Cir. 2022) (quoting United States v. Valle-Cólon, 21 F.4th 44, 50 (1st Cir. 2021)). As we explained, at sentencing the district court emphasized the uniquely dangerous nature of machine guns and the amount of ammunition found with the gun. This analysis represents a "plausible explanation" for the upward variance given the totality of the circumstances. See Soto-Soto, 855 F.3d at 450.

The district court also reached a defensible result. "[T]he length of the sentence does not make it per se unreasonable. 'The district court evaluated the factors provided under 18 U.S.C. § 3553(a) and determined that an above-guidelines sentence was appropriate.'" United States v. Contreras-Delgado, 913 F.3d 232, 243 (1st Cir. 2019) (quoting United States v. Santini-Santiago, 846 F.3d 487, 492 (1st Cir. 2017)). Given the factors it cited and our case law, we cannot conclude that the district court's decision to impose a sixty-month upward variance, twice the guideline sentence, falls outside the broad universe of reasonable results. See, e.g., United States v. Fernández-Garay, 788 F.3d 1, 3, 6 (1st Cir. 2015) (upholding the substantive reasonableness of

a 120-month sentence pursuant to § 924(c)(1)(A)(i) where the defendant was arrested with a non-automatic firearm, two extended magazines, and an assortment of drugs).

Offering an analogy to sentences governed by section 2K2.1, a guideline that did not apply in his case, Morales argues that a sentence of sixty months adequately accounts for his particular characteristics and the nature of his offense. Morales contends that, if his identical conduct was analyzed under section 2K2.1 -- including the nature of his fully automatic pistol, prior conviction for a drug offense, and the fact that the weapon was possessed in furtherance of a drug trafficking crime -- he would have been subject to a guideline sentencing range of fifty-one to sixty-three months.

This comparison misses the mark. When applying the guidelines, we begin with the underlying offense of conviction, not the underlying conduct. See U.S.S.G. § 1B1.1(a)(1). As was true here, a defendant's underlying conduct can be charged in different ways. Cf. Blockburger v. United States, 284 U.S. 299, 304 (1932) (establishing that a defendant may be charged with multiple offenses based on the same underlying conduct as long as "each [offense] requires proof of a fact which the other does not"). Morales pleaded guilty to a violation of 18 U.S.C. § 924(c)(1)(A)(i), an offense with a five-year mandatory minimum sentence that does not account for his possession of a machine

gun -- and, accordingly, neither does the guideline that applied to his offense, section 2K2.4(b). This makes the district court's upward variance on that basis legally permissible under section 2K2.4(b), although it would not be for an offense covered under section 2K2.1. Ultimately, Morales's sentence must be reviewed based on the offense to which he pleaded guilty, and the applicable guideline, taking into account Congress's decision that the mandatory minimum sentence for that offense did not factor in possession of a machine gun.

"In sum, a sentence should be left intact so long as it is procedurally sound and there is 'a plausible sentencing rationale and a defensible result.'" Contreras-Delgado, 913 F.3d at 244 (quoting Martin, 520 F.3d at 96). Finding neither procedural nor substantive error on this record, we affirm Morales's sentence.

## B. Forfeiture Claim

Morales also appeals the district court's refusal to consider his Rule 41(g) motion to return $20,000 in cash seized from his vehicle. Namely, he contends that the civil forfeiture action did not divest the district court of either the authority or responsibility to consider his motion. Additionally, he argues that a contrary ruling is especially concerning for indigent defendants, particularly those who are incarcerated, because it would essentially force them to navigate the complex world of civil

legal proceedings from prison and without the benefit of court-appointed counsel.

Rule 41(g) provides:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). "Once seized property is no longer needed as evidence, a criminal defendant is presumed to have the right to its return." United States v. Pierre, 484 F.3d 75,87 (1st Cir. 2007). However, a district court may deny a Rule 41(g) motion "if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture[,] or the government's need for the property as evidence continues." Id. (alteration in original) (quoting United States v. Mills, 991 F.2d 609, 612 (9th Cir. 1993)).

Although we have previously explained that a post-conviction Rule 41(g) motion will be treated as a civil complaint for equitable relief, see United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995) (per curiam), we have not yet had cause to consider how to treat a motion by the defendant in an active criminal case, like this one, where the government

nevertheless seeks to resolve the forfeiture issues in a separate civil proceeding. We note the mandatory language of Rule 41(g), however, which includes no exceptions. And although the district court allowed Morales to benefit from appointed counsel in the civil forfeiture proceeding, we are mindful that Morales was not entitled to such representation, nor are future indigent defendants in similar circumstances guaranteed to be afforded the same privilege.

However, subsequent developments have mooted the parties' dispute on the forfeiture issue. On January 4, 2023, Morales and the government reached a settlement in the civil forfeiture action. See Consent Judgment, In re $20,000.00 in U.S. Currency, No. 20-1259 (D.P.R. Jan. 4, 2023). Pursuant to this settlement, the government returned $12,000 to Morales in a "Consent Judgment, which is firm, final[,] and unappealable." Id. at 2. Consequently, Morales no longer has a legally cognizable interest in the disposition of his Rule 41(g) motion. See Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 191 (1st Cir. 2022) ("A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will redress the alleged injury." (quoting Gulf of Me. Fishermen's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002))). This aspect of his appeal is therefore moot. See Chafin v. Chafin, 568 U.S. 165, 172 (2013) ("There is . . . no case or controversy, and a suit

becomes moot, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" (citation omitted)); see also U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 401-02 (1980) ("[T]he approach to take in applying Art. III is issue by issue. . . . [T]he fact that a . . . plaintiff's substantive claims are mooted due to an occurrence other than a judgment on the merits does not mean that all the other issues in the case are mooted.").

### III. CONCLUSION

For all these reasons, we **affirm**.