# United States Court of Appeals
## For the First Circuit

No. 23-1815

UNITED STATES,

Appellee,

v.

EDDIE COLÓN-VÁZQUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí, and Hamilton,* Circuit Judges.

Mauricio Hernandez Arroyo, with whom Law Offices of Mauricio Hernandez Arroyo was on brief, for appellant.
Gregory Bennett Conner, with whom W. Stephen Muldrow, United States Attorney for the District of Puerto Rico, Mariana E. Bauzá-Almonte, Assistant United States Attorney, and Daphne M. Cordero-Guilloty, Special Assistant United States Attorney, were on brief, for appellee.

June 26, 2026

---

* Of the Seventh Circuit, sitting by designation.

**GELPÍ**, **Circuit Judge**.    Defendant-Appellant Eddie Colón-Vázquez ("Colón") pled guilty to one count of possession of a machinegun, in violation of 18 U.S.C. § 922(o).  At sentencing, he advocated for an eighteen-month sentence, and the government recommended a twenty-four-month sentence.  The district court, however, sentenced Colón to forty-eight months of imprisonment, an eleven-month upward variance from the top of his Sentencing Guidelines range of thirty to thirty-seven months.  Colón now appeals, claiming his sentence is procedurally and substantively unreasonable.  He argues that the district court failed to adequately explain its sentence, and that the factors it relied on cannot support an upward variance.  We disagree.  Given the district court's thorough explanation of the several permissible factors it considered in determining Colón's sentence, we affirm.

## I.    BACKGROUND[1]

### A. The Offense and Plea

Early in the morning on February 28, 2023, officers from the Puerto Rican police department responded to a report of a man sleeping in a stolen vehicle.  When they arrived, Colón was sitting

---

[1] "'Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report' ("PSR"), and the transcript of the sentencing hearing." United States v. Morales-Vélez, 100 F.4th 334, 339 n.1 (1st Cir. 2024) (quoting United States v. Melendez-Rosado, 57 F.4th 32, 36 (1st Cir. 2023)).

in the driver seat of the vehicle with the front door open, speaking to a man who was crouching on the ground next to him. The second man ran away, but the officers detained Colón and searched the vehicle.[2]

The search turned up two firearms that had been modified to function as machineguns: a Glock pistol, model 22, and a Smith & Wesson rifle, model MP15. The pistol was loaded with a twenty-two-round magazine, with sixteen rounds in the magazine and one in the chamber. The officers also found a third firearm, a black Polymer 80 pistol, which was loaded with a twenty-two-round magazine with seventeen rounds in it. Finally, they found additional, loose ammunition and high-capacity magazines,[3] a black hoodie, two ski masks, a black fanny pack, and gloves in the vehicle.

A grand jury charged Colón with one count of possession of a machinegun, in violation of 18 U.S.C. § 922(o), and on June 16, 2023, he entered a guilty plea pursuant to an agreement. The parties calculated a total offense level of fifteen pursuant

---

[2] Note, the validity of the search is not at issue on appeal.

[3] To be specific: two Glock magazines, with twenty-two rounds and thirteen rounds of ammunition capacity, respectively; one rifle magazine with fifty rounds of ammunition capacity; two rifle magazines with thirty rounds of ammunition capacity each; forty-six rounds of .40 caliber ammunition; and 112 rounds of .223 caliber ammunition.

to the United States Sentencing Guidelines Manual ("U.S.S.G.").[4]
They agreed that Colón could recommend a sentence of eighteen
months, while the government could recommend a sentence of no more
than twenty-four months.  Colón waived his right to appeal only if
the district court imposed a sentence of twenty-four months or
less.[5]

## B. The Presentence Report

Notwithstanding the (non-binding) plea agreement, when
the United States Probation Office for the District of Puerto Rico
("Probation") prepared Colón's PSR, it calculated his total
offense level as nineteen, not fifteen.[6]  The difference arose, in
part, from the base offense level applied pursuant to U.S.S.G.

---

[4] The parties applied a base offense level of eighteen, then
subtracted three levels for acceptance of responsibility.
Although the plea agreement cited U.S.S.G. § 2K2.1(a)(4)(A) for
the base offense level, this citation appears to be an error.  A
base offense level of eighteen applies under § 2K2.1(a)(5), not
(a)(4); sub-section (a)(5) applies "if the offense involved a
firearm described in 26 U.S.C. § 5845(a)."  As discussed below,
both the Glock pistol and the Smith & Wesson rifle fell under
§ 5845(a)'s penumbra.

[5] Because the district court sentenced Colón to forty-eight
months, the appellate waiver does not apply.  Cf. United States v.
Staley, 43 F.4th 9, 14 (1st Cir. 2022) (noting a waiver of
appellate rights is "presumptively enforceable" if it "was made
knowingly and voluntarily" (quoting United States v. Nguyen, 618
F.3d 72, 74 (1st Cir. 2010))).

[6] The 2021 Guidelines Manual was used to prepare Colón's PSR.
All Guidelines citations are to that edition.  See U.S.S.G.
§ 1B1.11(a) ("The court shall use the Guidelines Manual in effect
on the date that the defendant is sentenced.").

§ 2K2.1. That Guidelines provision governs unlawful firearm possession and sets a base offense level that varies depending on factors such as the nature of the firearm(s) and the defendant's criminal history. See U.S.S.G. § 2K2(a)(1)-(8). It further directs that the greatest base offense level should apply. U.S.S.G. § 2K2(a).

Pursuant to that directive, where the parties applied a base offense level of eighteen under sub-section (a)(5), Probation applied a base offense level of twenty under sub-section (a)(4)(B). Guidelines § 2K2.1(a)(4)(B) applies, in relevant part, if (1) the offense involves a firearm that is described in 26 U.S.C. § 5845(a), and (2) the defendant was a "prohibited person" at the time of the offense. U.S.S.G. § 2K2.1(a)(4)(B)(i)(II), (ii)(I). As to the first prong, 28 U.S.C. § 5845(a) includes machineguns like the Glock pistol and the Smith & Wesson rifle, which had both been modified to "shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 28 U.S.C. § 5845(b). As to the second prong, because Colón was "a long-term user of marijuana," he was a "prohibited person" under the Guidelines. U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I); Id. cmt. n.3.

After determining the base offense level, Probation added two levels pursuant to U.S.S.G. § 2K2.1(b)(1) because the offense involved three firearms -- a specific offense characteristic not contemplated by the parties -- resulting in an

adjusted offense level of twenty-two. After deducting three levels for acceptance of responsibility under § 3E1.1(a) and (b), Colón's total offense level was nineteen. Because he had no prior arrests or convictions, his total criminal history score was zero, resulting in criminal history category I. Based on a total offense level of nineteen and criminal history category I, Colón's Guidelines sentencing range was thirty to thirty-seven months' imprisonment. Colón did not object to the PSR. (We further address this issue in Part II.A. of the opinion.)

## C. The Sentencing Hearing

At sentencing on September 15, 2023, defense counsel opened by emphasizing that Colón is a young person with family support and no criminal history, and that no one was "directly" hurt by the offense conduct. Counsel also pointed to the separation of Colón's parents as a factor which affected his decision-making and requested a sentence of eighteen months. The government then addressed the court. It summarized the circumstances of his arrest and the search of the vehicle, then explained: "[T]hese are basically the tools that are used by the persons involved in either drug trafficking or violent incidents to disguise themselves when they are prepared for shootouts. We are not saying that he is charged with that here, but the evidence seized speak[s] for itself." The government requested a sentence of twenty-four months. Finally, Colón briefly spoke. He

apologized to his family, "since it wasn't because [he] didn't have good advice" and they were "the ones who are affected because of [his] bad actions."

Next, the district court recounted the charge and plea, summarized the Guidelines calculations and sentencing range, and stated that it had considered the statutory sentencing factors, the PSR, the plea agreement, Colón's sentencing memorandum, the parties' arguments, and Colón's allocution. It also briefly reviewed his personal characteristics, including his age, educational background, employment status, and history of drug use.

The court then addressed the offense conduct. It first opined about the dangerousness of machineguns and specifically noted: "During his interview . . . by the probation officer, Mr. Colón said that he engaged in his conduct because he was following a trend and living his life as if it were a movie. He was following the acquaintances that pressured and supported this type of behavior." Next, the district court changed gears, articulating that this Court "requires that a sentencing [c]ourt, when imposing a significant variance, . . . make clear which specific facts of the case motivated its decision and why these facts led to its decision to vary upward." To that end, the district court listed the following facts.

First, the court pointed to the combination of the two modified firearms, third pistol, ammunition and high-capacity magazines, ski masks, hoodie, gloves, and the fact that Colón was dressed in black, all of which it took as "evidence of matters having to do either with drug transactions or with violent crime on this island." It suggested that if Colón's "friends had that type of weaponry with them, they . . . would also be probably involved in drug trafficking or violent crimes."

Second, citing to our decision in United States v. Valle-Colón, 21 F.4th 44 (1st Cir. 2021), the district court noted that the Guidelines do not account for the possession of an assault rifle, and that "[c]oncerns about the seriousness of such fire power [are] sufficient to remove this case from the heartland of the relevant guidelines."

Third, citing to our decision in United States v. Bruno-Campos, 978 F.3d 801 (1st Cir. 2020), the district court highlighted the amount of assault rifle ammunition of two different calibers as a "significant factor" and "additional reason" to impose an upwardly variant sentence. It again noted that the Guidelines did not account for the weapons, ammunition, magazines, ski masks, and hoodie.

Fourth, the court emphasized the "high crime rate and proliferation of illegal firearms in Puerto Rico" as "an appropriate sentencing consideration" to "promote[] general and

specific deterrence." As to this factor, the district court spent some time trying to parse this Court's precedent. The district court took note of the particularly high homicide rate in Puerto Rico, as compared to the homicide rate in other First Circuit jurisdictions. And it linked that high crime rate to the items Colón possessed, which the court again emphasized "are items that are used for criminal actions," since "firearms and violent crime are coextensive" and "guns and drug dealing go together like a hand in a glove."

Given these facts, the district court concluded that an upwardly variant sentence was appropriate and that neither the recommended sentences, nor a Guidelines range sentence, reflected the seriousness of the offense, promoted respect for the law, protected the public, or adequately addressed the need for deterrence and punishment. It then sentenced Colón to forty-eight months of imprisonment.

Defense counsel objected to the sentence, arguing that Colón was "being sentenced for firearms or crimes or items for which he was not indicted, . . . or perhaps they are being used as enhancements, and these enhancements are not even mentioned in the [PSR] as an option." Counsel further asserted that "we really do not know the . . . totality of the circumstances for which these items were in the car . . . . And [Colón] should be sentenced for the facts of the case, not for speculations." The district court

disagreed, stating, "I don't think that I'm speculating. All of these things that were found were in the car in which Mr. Colón was sitting and which had been stolen four days before." This appeal followed.

## II. DISCUSSION[7]

We review preserved claims of sentencing error for abuse of discretion. United States v. Morales-Vélez, 100 F.4th 334, 341 (1st Cir. 2024). Under this "multifaceted standard," we review factual findings for clear error, "interpretations and applications of the Guidelines" de novo, and "judgment calls" for abuse of discretion. United States v. Mercado-Cañizares, 133 F.4th 173, 178-79 (1st Cir. 2025) (citation modified).

"[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" Gall v. United States, 552 U.S. 38, 46 (2007). In determining reasonableness, we first "consider if the sentence is procedurally reasonable." Morales-Vélez, 100 F.4th at 341. Second, "we consider 'any claim of substantive unreasonableness.'" Id. (quoting United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020)). In "conducting this review," we "take into account the totality of the

---

[7] The district court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

- 10 -

circumstances, including the extent of any variance from the Guidelines range." Gall, 552 U.S. at 51.

## A. Colón's Variance

Before turning to our review, we start with a point of clarification. Colón's briefing refers to his sentence as both an eleven-month variance and as a twenty-four-month variance that is "double" the Guidelines sentence. He also states that his sentence is "[eleven] months higher than the contested guideline sentencing range." (Emphasis added.) And he asks us to remand and direct the district court to employ a "base offense level of [nineteen]," or, "[i]n the alternative, if [we] determine[] that the calculations were correct," to nevertheless vacate.

Under Federal Rule of Criminal Procedure 32(f)(1), Colón had fourteen days from receipt of the PSR to "state in writing any objections," including objections to the Sentencing Guidelines range. But as noted in Part I.B., he did not do so. Ordinarily, "[a] party waives any objection to the PSR by failing" to file written objections within fourteen days, per the District of Puerto Rico's Local Criminal Rule 132(b)(3)(A). See also United States v. Severino-Pacheco, 911 F.3d 14, 20 n.5 (1st Cir. 2018) ("[The defendant's] failure to object to the PSR . . . might be interpreted as a waiver.").

Nevertheless, "[t]here will be instances when a district court's sentencing of a defendant within the framework of an

incorrect Guidelines range goes unnoticed." Molina-Martinez v. United States, 578 U.S. 189, 193-94 (2016). In that instance, when a defendant failed "to object to the miscalculation" below, we would review for plain error under Federal Rule of Criminal Procedure 52(b). Id. at 194. But having carefully reviewed the PSR's Guidelines calculations, see supra Part I.B, we discern no error and conclude that the district court applied the correct range: thirty to thirty-seven months.

With that conclusion in mind, "the starting point for a court's sentencing determination is the guideline range, not the parties' recommendations." Morales-Vélez, 100 F.4th at 342 (quoting United States v. Cortés-Medina, 819 F.3d 566, 573 (1st Cir. 2016)). Thus, "in evaluating the reasonableness of [Colón's] variant sentence, we compare the variance to the guideline [range], not the sentence[s] recommended by the parties." Id. Colón's unobjected to Guidelines range was thirty to thirty-seven months, so we proceed with the understanding that his forty-eight-month sentence is an eleven-month upward variance.

## B. Procedural Reasonableness

Colón claims that his sentence is procedurally unreasonable because the district court failed to adequately explain the sentence. His main argument is that none of the factors considered by the district court, including the dangerous nature of machineguns and the quantity and type of ammunition,

carried his case outside of the "heartland" of the applicable Guidelines. We reject this claim for two reasons. First, Colón's arguments isolate each underlying sentencing factor, but the district court relied on a combination of facts and considerations, not on any single factor alone. Second, our recent case law forecloses his arguments.

When a sentencing court "decides that an outside-Guidelines sentence is warranted" based on the statutory sentencing factors, see 18 U.S.C. § 3553(a), it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at 50. Then, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id.; see also 18 U.S.C. § 3553(c) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence.").

For purposes of appellate review, "sentencing courts must say enough to show . . . they considered the parties' arguments and had a reasoned basis for exercising their own legal decisionmaking authority." Morales-Vélez, 100 F.4th at 341 (citation modified). When a court varies upward, its "duty of explanation 'increases in proportion to the extent of the . . . deviation from the guideline range: the greater the

deviation, the greater the burden of justifying the sentence imposed.'" Id. at 341-42 (quoting United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016)). Failure to adequately explain a sentence constitutes procedural error. Gall, 552 U.S. at 51.

Here, the district court pointed to the following combination of facts and considerations when it determined Colón's sentence: his possession of three firearms -- including two machineguns -- with ammunition and high-capacity magazines; the ski masks, hoodie, fanny pack, and gloves, and Colón's black clothing; and Puerto Rico's high deterrence needs due to its homicide rate. Because the district court relied on these combined factors, we think this case is distinguishable from the cases Colón cites. See United States v. Rivera-Berríos, 968 F.3d 130 (1st Cir. 2020); United States v. García-Pérez, 9 F.4th 48 (1st Cir. 2021); United States v. Carrasquillo-Sánchez, 9 F.4th 56 (1st Cir. 2021). In each of the cited cases, we reversed and remanded where the district court imposed an upward variance based solely or primarily on the dangerous nature of machineguns, though this factor was already accounted for by the applicable guideline, without sufficient explanation. Rivera-Berríos, 968 F.3d at 137; García-Pérez, 9 F.4th at 53; Carrasquillo-Sánchez, 9 F.4th at 57, 62. Colón's case, however, is more akin to United States v. Polaco-Hance, 103 F.4th 95 (1st Cir. 2024), where we affirmed a

- 14 -

sentence because the judge did not "give dispositive weight to [the dangerousness of machineguns] alone but rather considered it along with . . . other valid and individualized factors."  Id. at 102; see also Morales-Vélez, 100 F.4th at 344 (distinguishing the defendant's case from the Rivera-Berríos line because "the district court did not rely exclusively on the nature of machine guns to support its upward variance but also based its sentence on the amount and type of ammunition found with the gun").

Moreover, even if the district court had not considered a combination of factors, one of the factors it relied on suffices to justify this variance under our case law: the quantity of ammunition.  Sentencing courts may vary upward where the Guidelines do not account for the possession of "substantial quantities of ammunition, and/or multiple high-capacity magazines," particularly when the defendant has "more ammunition or magazines than would be expected in a typical unlawful possession case."  Bruno-Campos, 978 F.3d at 806 (first quote); United States v. Rosario-Merced, 109 F.4th 77, 83 (1st Cir. 2024) (second quote); see also Polaco-Hance, 103 F.4th at 101 ("We have held repeatedly that the amount of ammunition and the number of extended magazines . . . can be valid bases for an upward variance for firearms offenses.").

In United States v. Mercado-Cañizares, 133 F.4th 173 (1st Cir. 2025), the district court relied, in part, on the

- 15 -

quantity of ammunition present in imposing the exact variance at issue here -- forty-eight months, up from thirty-seven months at the top of the Guidelines range.  Id. at 178.  We affirmed, holding that seventy-four rounds of ammunition, fifty of which were loaded in two high-capacity magazines, was "independently sufficient to support" the variance.  Id. at 181.  As summarized in Part I.A. supra, Colón possessed more ammunition than the defendant in Mercado-Cañizares: seventeen rounds loaded into a twenty-two-round magazine in the Glock pistol, another seventeen rounds loaded in a twenty-two-round magazine in the Polymer 80 pistol, two additional Glock magazines, three rifle magazines, and 158 rounds of loose ammunition of two different calibers.  The ammunition alone is thus "independently sufficient" under our precedent to support the upward variance.[8]  Id.; see also Rosario-Merced, 109

---

[8] Colón's arguments do not change our conclusion.  He points out that "there are no federal limits to how much ammunition one can legally own," nor any "prohibition on specialty ammunition." He then argues that the total ammunition and magazines he possessed is not "atypical or outside the ordinary for typical gun ownership."  To illustrate this point, he notes that ammunition is typically sold in boxes of fifty rounds, and that commercial airlines allow passengers to travel with ammunition in excess of the amounts he possessed.

The thrust of his argument is that the ammunition he possessed was "consistent with simple possession of a machine gun." Rivera-Berríos, 968 F.3d at 135.  At the risk of stating the obvious, our case law referring to "simple possession" contains an implicit assumption: that we are considering the amount of ammunition in the context of illegal firearm possession, and not within the context of legal gun ownership.  See Rosario-Merced, 109 F.4th at 83 (discussing ammunition in a "typical unlawful

F.4th at 84 (collecting cases in which we found no error with respect to upward variances based, in part, on the amount of ammunition).

Given this conclusion, we need not consider Colón's challenges to the other facts the district court relied on, such as the multiple firearms and the ski masks, or community-based factors.[9] Instead, we turn to his additional arguments attacking the sufficiency of the district court's explanation.

_____

possession case" (emphasis added)). Therefore, we think his argument is creative, but ultimately inapposite.

Colón also highlights that the only Guidelines provision which mentions ammunition "significantly ratchets down the offense level when the number of rounds is less than 500." Again, this argument is inapposite, as the referenced guideline concerns the exportation of arms or munitions without a license. See U.S.S.G. § 2M5.2.

Finally, Colón correctly observes that he did not plead guilty to "any specification of amounts of ammunition." But this information was included in his PSR, which he did not object to. As such, "the district court was entitled to draw upon the facts within it." United States v. González-Rodríguez, 859 F.3d 134, 137 (1st Cir. 2017).

[9] We do, however, issue a note of caution. Relying on our decision in Valle-Colón, the district court stated that the Guidelines do not account for Colón's possession of an assault rifle, and that "[c]oncerns about the seriousness of such fire power is sufficient to remove this case from the heartland of the relevant guidelines."

Valle-Colón, however, concerned a different offense, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). 21 F.4th at 49. This statute "does not specifically account for machine guns," and the Guidelines range for these convictions is calculated under U.S.S.G. § 2K2.4(b). Morales-Vélez, 100 F.4th at 343. But here, Colón's Guidelines range for his 18 U.S.C. § 922(o) conviction was calculated under U.S.S.G. § 2K2.1, and as explained in Part I.B.,

- 17 -

First, as we understand it, Colón argues the district court did not explicitly state that it was imposing a Kimbrough variance based on a policy disagreement with the Guidelines' treatment of machineguns. See Kimbrough v. United States, 552 U.S. 85 (2007). Accordingly, without notice that the court intended to impose such a variance, "[i]t was impossible . . . to raise any objections to disagreement with [the] guidelines . . . notwithstanding . . . that the gun possession was already included in the guidelines."

We disagree with this assessment. The district court explicitly called out the dangerous nature of machineguns and later stated: "Concerns about the seriousness of such fire power is sufficient to remove this case from the heartland of the relevant guidelines." And at the end of sentencing, the district court heard objections from Colón's counsel. The record thus makes pellucid that Colón had an opportunity to object to the district court's assessment of the dangerous nature of machineguns and to the weight the district court assigned to that factor. See United States v. Carmona-Alomar, 109 F.4th 60, 73 (1st Cir. 2024) (noting

the base offense level covered both the modified pistol and the Smith & Wesson rifle. See id. at 342 ("The statutory regimes underpinning sections 2K2.4(b) and 2K2.1, and the text of the guidelines themselves, are fundamentally different. Accordingly, our analysis of each guideline yields a different result.").

But, despite this oversight, Colón does not argue that this error alone requires that the sentence be vacated. See United States v. Sineneng-Smith, 590 U.S. 371, 375 (2020).

that though the defendant objected to the district court's reliance on the dangerous nature of machineguns, he "fail[ed] to explain . . . why the mere fact that the District Court gave some weight to th[at] factor[] . . . shows that the . . . sentence was procedurally unreasonable").  Furthermore, Colón conceded at oral argument that this sentence is not a Kimbrough variance, and that the district court could permissibly reach the same result through such a variance.

Next, Colón takes issue with the district court's explanation regarding its consideration of community-based factors, i.e., Puerto Rico's homicide rate.  He says the district court relied on this factor "without any citation to authority" and attacks the court's case law discussion as "rudimentary."  The government argues that Colón waived this claim because he raised it for the first time on appeal and failed to argue plain error.  Colón counters that his objection at sentencing preserved the claim, and we should review de novo.  We conclude that regardless of the standard of review applied, the record belies Colón's assertions.  See Polaco-Hance, 103 F.4th at 100 ("We need not resolve this dispute, however, because we conclude that [the defendant] cannot prevail even if we grant him the benefit of abuse-of-discretion review.").

Under our precedent, "a sentencing judge may consider community-based and geographic factors," as "the incidence of

particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence." United States v. Flores-Machicote, 706 F.3d 16, 22-23 (1st Cir. 2013); see also 18 U.S.C. § 3553(a)(2)(B) (directing sentencing courts to consider the need "to afford adequate deterrence to criminal conduct"). Still, community-based factors must be "considered in conjunction with case-specific factors." Carmona-Alomar, 109 F.4th at 72. Relevant here, at the time of Colón's sentencing we had withdrawn a panel opinion in United States v. Flores-González, 34 F.4th 103 (1st Cir. 2022), in order to hear the case en banc and consider "whether a district court, in its discretion, may rely on the characteristics of the specific community in which the defendant committed his offense (in this case, the alleged prevalence of machinegun crimes in Puerto Rico) . . . to impose a variant sentence." United States v. Flores-González, 46 F.4th 57, 58 (1st Cir. 2022) (Mem.).

Within this context, in which an en banc decision had not yet issued, the district court explained that we have "set forth shifting standards regarding the propriety of community-based considerations" and spent ample time parsing our case law. We read this discussion as an attempt to situate Colón's sentence within the guidance we had issued to that point, and to explain why the variance should be sustained, not as "rudimentary." In light of the same, as well as the district court's citations to

the Centers for Disease Control and Prevention and the Puerto Rico Statistics Institute for the homicide rates he read into the record, it is not clear why Colón argues that the district court did not provide any citations or other authority. Accordingly, we move on.

Two final issues. First, Colón notes that the "district court cited some cases . . . but did not cite to all of the cases in the Statement of Reasons." Absent more developed argumentation, we are not quite sure what this challenge is, and so deem it waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Second, in his reply brief Colón seems to assert there is a sentencing disparity between him and other defendants. But because he did not raise this issue in his opening brief, it is also waived. See United States v. Thompson, 62 F.4th 37, 42 n.1 (1st Cir. 2023).

In sum, we conclude that the district court "committed no significant procedural error." Gall, 552 U.S. at 53 ("[The judge] correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered all of the § 3553(a) factors, and thoroughly documented his reasoning."). We thus turn to Colón's substantive challenge.

## C. Substantive Reasonableness[10]

Colón argues that his sentence is substantively unreasonable because he is a "violence free offender" who committed a "violence and victim free crime with no facts of note beyond the type of firearm."  As such, he asserts that a sentence of twenty-four months adequately accounts for the nature of his offense, taking into consideration his personal characteristics. And he further claims the district court did not consider his personal characteristics, including, among other things, that he has no criminal history, has never been arrested, was not charged with stealing the vehicle, and did not discharge the firearms.

Sentencing courts "must weigh competing factors and impose a sentence that is 'sufficient, but not greater than necessary,' to serve multiple, often-conflicting goals of sentencing."  Rosario-Merced, 109 F.4th at 85 (quoting 18 U.S.C. § 3553(a)).  This process is "unavoidabl[y] . . . discretionary," and thus, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes."  Id. (first quote); United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (second quote).  A substantively reasonable sentence requires (1) "a plausible sentencing rationale" and (2) "a

---

[10] Colón's objection below preserved his substantive reasonableness challenge for appeal, so we review for abuse of discretion.  Morales-Vélez, 100 F.4th at 341.

- 22 -

defensible result." Morales-Vélez, 100 F.4th at 346 (quoting United States v. Rodríguez-Cruz, 997 F.3d 362, 366 (1st Cir. 2021)). We think both are present here.

True, at sentencing the district court did not wax eloquent with respect to Colón's personal characteristics. But it does not follow that the judge did not consider those characteristics. See Severino-Pacheco, 911 F.3d at 22 ("Even if the emphasis on his personal circumstances was not as apparent as [Colón] would have preferred, brevity is not to be confused with inattention." (Citation modified.)). The district court "explicitly" acknowledged Colón's personal characteristics. Id. That acknowledgment merits some weight in our review. And Colón received credit for his lack of criminal history in the Guidelines calculations, which are "the starting point and the initial benchmark" for sentencing courts. Gall, 552 U.S. at 49; accord Peugh v. United States, 569 U.S. 530, 542 (2013) ("Even if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence." (Citation modified.)).

In short, Colón's sentence "falls within [the] broad universe" of substantively reasonable sentences. Morales-Vélez, 100 F.4th at 345 (quoting United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020)).

## III. CONCLUSION

Because we discern no procedural or substantive error, we **affirm** Colón's forty-eight-month sentence.